UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

NANCY J. WHALEN

    Plaintiff

v.

NUCAR CONNECTION, INC., et al.

    Defendants

CIVIL ACTION

RDB 02 CV 191

\*\*\*

DEFENDANT UNIVERSAL'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO COUNT IV AND FOR SUMMARY JUDGMENT
AS TO COUNT V

Defendant Universal Underwriters Insurance Company ("Universal"), by its attorney, moves for partial summary judgment as to Count IV of Plaintiff Nancy J. Whalen's Amended Complaint and for summary judgment as to Count V of that Amended Complaint for the following reasons:

1. There is no genuine dispute as to any material fact;

2. Universal is entitled to summary judgment as a matter of law;

3. Universal is entitled to partial summary judgment as to Count IV of Whalen's Amended Complaint because the Universal policy provides a combined single limit of $40,000 of uninsured/underinsured motorist coverage;

  4. Universal is entitled to summary judgment as to that portion of Count V of Whalen's Amended Complaint that seeks a declaration that Coverage Part 900 (Basic Auto) applies because the 2000 Camaro Z8 she was operating is not insured under that Coverage Part; and

  5. Universal is entitled to summary judgment as to that portion of Count V of Whalen's Amended Complaint that seeks a declaration that Barbara Dunn is an insured under Coverage Part 980 (Umbrella) because she is not an insured under that Coverage Part.

  Wherefore, Universal asks this Court to grant this Motion and decide, adjudge and declare that the Universal policy:

  A. Provides $40,000 of uninsured/underinsured motorist coverage;

  B. Does not provide coverage to Dunn under Coverage Part 900; and

  C. Does not insure Dunn under Coverage Part 980.

In addition, Universal asks this Court to take whatever other action it deems necessary and appropriate.

              Respectfully submitted,

              _____
              Andrew Janquitto
              Mudd, Harrison & Burch
              105 West Chesapeake Avenue
              300 Jefferson Building
              Towson, Maryland 21204
              410 828 1335
              Fed. Bar. # 06637

MEMORANDUM IN SUPPORT OF MOTION

Defendant Universal Underwriters Insurance Company ("Universal"), by its attorney, files this memorandum in support of its motion for partial summary judgment as to Count IV of Plaintiff Nancy J. Whalen's Amended Complaint and for summary judgment as to Count V of that Amended Complaint.

### The Accident

Plaintiff Whalen was injured in a July 4, 2000, accident while a passenger in a vehicle operated by Defendant Barbara Dunn and owned by NuCar Connection, Inc. See Amended Compl. ¶ 2. That vehicle was a 2000 Camaro Z8 registered in Delaware. See Police Report Excepts (Ex. 1).

### The Insurance

Universal insured Nucar Connection, Inc. from November 1, 1999, to November 1, 2000, under Unicover policy 188025B. A copy of the policy is attached as Exhibit 2. That policy contains the July 1993 edition of the Unicover 5 policy form. The Unicover 5 is a multiple peril policy designed to cover risks associated with the operation of car dealerships and similar entities. The Univcover 5 policy form is divided into several Coverage Parts, which are given numerical designations. The Coverage Parts contained in the Unicover 5 are Auto Inventory Physical Damage (Coverage Part 300); Property (Coverage Part 330); Crime (Coverage Part 380); Garage (Coverage Part 500); Uninsured Motorist (Coverage Part 530); Agent's Errors and Omission (Coverage Part 550); Basic

Auto (Coverage Part 900); General Liability (Coverage Part 950); Personal Umbrella (Coverage Part 970); and Umbrella (Coverage Part 980). See Universal Policy (Ex. 2); see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 2. In addition to these coverage parts, the Universal policy contains a section setting forth the general conditions, a State Amendatory Part, and several endorsements that, if specified in the declaration pages as being applicable, modify the coverages provided under the various Coverage Parts. See Universal Policy (Ex. 2); see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 3.

The Universal policy lists 17 "named insureds." Each of the named insureds is given a number (1 through 17), which is then used when designating which coverages apply to which named insureds. NuCar Connection is named insured # 3. The policy also lists 26 "other insureds."[1] The "other insureds" are given an alphabetic references (AA through ZZ), which are then used when designating which coverages apply to which "other insureds." See Universal Policy (Ex. 2), Declaration Pages at 1-B to 1-C; see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 3.

Dunn is not listed one of the named insureds or "other insureds" in the declaration pages. As such, she is an insured only to the extent she qualifies as an omnibus insured for a particular Coverage Part. See Universal Policy, Unicover 5 page 5 (defining insured as "any person or organization qualifying as an INSURED in the WHO IS AN INSURED provision of the Coverage Part.").

---

[1] Some of the "other insureds" are individuals and some are business entities. In several instances, two individuals are listed as one entry.

Similarly, Whalen is not listed as one of the named insureds or other insureds. She therefore qualifies for uninsured/underinsured motorist coverage only to the extent she is an omnibus insured for that coverage.  See id.

Whalen's Amended Complaint

Nancy Whalen has sued Dunn, Donald Temper and NuCar Connection in tort. She alleges that her injuries were caused, jointly and/or severally, by Dunn and Temper. In addition, she claims that NuCar Connection is vicariously liable for Dunn's tortious acts.  See Amended Compl. ¶¶ 6 to 16.

Whalen has also sued Universal for uninsured/uninsured motorist coverage.  In Count IV of the amended complaint, she alleges that the Universal policy provides $300,000 of uninsured/underinsured motorist coverage.  Id. ¶ 19.  She also evidently alleges that Coverage Part 980 provides an additional $20,000,000 of uninsured/underinsured motorist coverage.  Id.  She seeks $2,000,000 in damages.

Whalen also seeks, in Count V, a declaration that the Universal policy provides $300,000 of liability insurance to Dunn under Coverage Part 900 (Basic Auto) and $20,000,000 of excess liability insurance under Coverage Part 980 (Umbrella).  Id. ¶¶ 26-27.

ARGUMENT

Whalen's assertions of insurance coverage are incorrect, and Universal is entitled to summary judgment on those issues.

1.

Choice of Law

In this diversity case, this Court must apply the law of the forum in deciding what substantive law to apply to the interpretation of the Universal insurance policy. See Klaxon v. Stentor Mfg. Co., 313 U.S. 487 (1941). Maryland follows the doctrine of lex loci contractus when determining the choice of law in a case involving the interpretation of a contract. See Kramer v. Bally's Park Place, 311 Md. 387, 390, 535 A.2d 466, 468 (1988). Under this doctrine, "an insurance contract is construed 'according to the laws of the state where the last act is performed which makes [the] agreement a binding contract.'" Sting Security, Inc., et al. v. First Mercury Syndicate, Inc., 791 F.Supp. 555, 558 (D.Md. 1992) (quoting Travelers Indem. Co. v. Allied-Signal, Inc., 718 F.Supp. 1252, 1253 (D.Md. 1989)). Typically, the law of the place where "the policy is delivered and the premiums are paid" is the law that applies. Id. at 558.

Delaware is where the Universal policy was formed. The Universal policy was delivered in Delaware, and the premiums were paid in Delaware. See Affidavit of John Marcionetti (Ex. 4). The policy also contains a section, entitled State Amendatory Part, which contains Delaware endorsements designed to conform the policy to meet Delaware statutory provisions. See Universal policy (Ex. 2), Delaware State Amendatory Part,

Unicover V (DE-SAP-UC-V (05-97)).  The presence of these state-specific endorsements is another indicator that Delaware law applies.  See Sting Security, 791 F.Supp. at 558.  Indeed, it would be difficult to conceive another state's law applying to the policy, particularly to the issue of what insurance coverages apply to the vehicle involved in the July 4, 2000, accident.  That vehicle was registered in Delaware and, as such, was subject to Delaware's compulsory motor vehicle insurance provisions.  Additionally, that vehicle was owned by NuCar Connection, which is a Delaware corporation with its principal place of business in Delaware.  See Amended Compl. ¶ 4.

2.

Delaware Law

An insurance policy delivered in Delaware to provide insurance coverage for a vehicle registered in Delaware must provide certain minimum coverages.  See Del. Code Ann., tit. 21, 2902 (2002).  Among others, the policy must provide uninsured motorist coverage in an amount not less than $15,000 per person and $30,000 per accident for bodily injury and $10,000 per accident for property damage.  See id., tit. 18, § 3902(a)(2).  The insured can also elect to include underinsured motorist coverage within the uninsured motorist coverage.  See id. § 3902(b)(2).

Delaware follows special rules of contract construction with regard to insurance policies.  Delaware law requires that a court interpret insurance contracts "in a common sense manner," SI Management L.P. v. Wininger, 707 A.2d 37, 42 (Del. 1998), according the policy terms their "ordinary, usual meaning," New Castle v. Hartford I, 933 F.2d

7

1162, 1188 (3d Cir. 1991). In construing a policy, a court must consider the policy as a whole. See, e.g., id. at 1194 (ascertaining whether a term "is ambiguous in the context of a specific insurance policy"); see also Porter v. Pathfinder Servs., Inc., 683 A.2d 40, 42 (Del. 1996) (construing language of an employment contract in its context as a whole). "Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it," Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co., 616 A.2d 1192, 1195 (Del. 1992) (citation omitted), because "creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties have not assented," Hallowell v. State Farm Mut. Auto. Ins. Co., 443 A.2d 925, 926 (Del. 1982) (citations omitted).

### 3.

### The Universal Policy provides $40,000 of uninsured/underinsured motorist coverage

Count IV of Nancy Whalen's Amended Complaint alleges that the Universal policy provides $300,000 of uninsured/underinsured motorist coverage. See Amended Compl. ¶ 19. Though it is not entirely clearly, Count IV also apparently asserts that the Universal policy provides, via Coverage Part 980, an additional $20,000,000 of uninsured/underinsured motorist coverage. See id. Both of Whelan's assertions about the limits of uninsured/underinsured motorist coverage are incorrect. With regard to Whalen, the Universal policy provides (subject to all its terms) $40,000 of uninsured/underinsured motorist coverage.

A.

Coverage Part 530 provides $40,000
of uninsured/underinsured motorist coverage

Uninsured motorist coverage is provided by Coverage Part 530 of the Universal policy. See Universal Policy (Ex. 2), Unicover 5 at pages 42 to 44. By endorsement 91, the uninsured motorist coverage is amended to include underinsured motorist coverage. See Universal Policy (Ex. 2), Unicover 5 at page 109. The Declarations Pages for the policy indicate that Coverage Part 530 provides $40,000 of coverage in a single combined limit. See Universal Policy (Ex. 2), Declaration Pages at 1-II; see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 15. Underinsured motorist coverage is included in this limit. See Universal Policy (Ex. 2), Declaration Pages at 1-II; see also Affidavit of Thomas Hubbartt (Ex. 3). This single combined limit fulfills Delaware's statutory mandate because it is the aggregate of the required split limits ($30,000 per accident for bodily injury plus $10,000 per accident of property damage = $40,000 combined single limit).[2]

---

[2]In addition, the Universal policy indicates that the $40,000 combined single limit will be applied the separate limits required by Delaware law. The State Amendatory Endorsement in the Universal policy modifies the limit-of-liability provision of Coverage Part 530:

The first paragraph of THE MOST WE WILL PAY condition is amended to include:

WE will apply this limit to first provide the separate limits required by the Uninsured Motorist law of the State of Delaware for:
    (a)  BODILY INJURY to one person in any one ACCIDENT;
    (b)  BODILY INJURY to two or more persons in any one ACCIDENT;
    (c)  PROPERTY DAMAGE in any one ACCIDENT.

This provision will not change OUR total limit of liability.

Universal policy (Ex. 2), State Amendatory Part at page 2-C.

9

The introduction for Coverage Part 530 states:

> This Coverage Part applies only when it is shown in the declarations. Such insurance applies only those insureds, security interests and locations designated for each coverage as identified in declarations item 2 by letter(s) or number

Universal Policy (Ex. 2), Unicover 5 at 42. The Declaration Pages indicate that Coverage Part 530 is applicable to the named insureds designated by the numbers 1, 3, 5, 8, 11, 12, 13 and 17.[3] As noted above, NuCar Connection is named insured # 3. Whalen is not a named insured under the Universal policy.

Coverage Part 530 is also amended by endorsement 92, which extends uninsured/underinsured motorist coverage to certain designated individuals. See Universal Policy (Ex. 2), Unicover 5 at page 109; see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 17. These designated individuals are listed on the declaration page: C. Ronald Miller, Bonnie, Miller, David B. Greytak, James R. Capron, Michelle Capron, Robert L. Davis, Robin Davis, Gail Chickersky, Howard Reamer and Cheryl Reamer. See Universal Policy (Ex. 2), Declaration Pages at 1-JJ; see also Affidavit of Thomas Hubbartt (Ex. 3), ¶ 17. The uninsured/underinsured motorist coverage provided to these designated persons is $300,000. See Universal Policy (Ex. 2), Unicover 5 at page 109; see also Affidavit of Thomas Hubbartt (Ex. 3). Whalen is not listed on the declaration page as one of the designated individuals entitled to the uninsured/underinsured motorist coverage of $300,000.

---

[3] NuCar, Inc. is # 1, Nucar Motors, Inc. is # 5, Greytak and Miller Partnership is # 8, NuCar Consulting, Inc. is #11, NuCar Kent, LLC is # 12 NuCar Middleton, Inc. is # 13, and Hertrich Investments, Ltd. Is # 17. See Universal Policy (Ex. 2), Declaration Pages at 1-A.

Whelan, however, qualifies as an insured for uninsured/underinsured motorists coverage because she is occupying a vehicle owned by NuCar Connection that is insured under the Universal policy.[4]  Persons occupying a vehicle owned by NuCar Connection are covered for uninsured/underinsured motorist coverage under Coverage Part 530 but are subject to the $40,000 combined single limit provided to the named insureds. Coverage Part 530 states:

> WHO IS AN INSURED--With respect to this Coverage part,
>
> (1)   YOU;[5]
>
> (2)   any of YOUR partners, paid employees, directors, stockholders, executive officers or any FAMILY MEMBER while OCCUPYING a COVERED AUTO;
>
> (3)   any other person while OCCUPYING a COVERED AUTO;
>
> (4)   anyone for DAMAGES they are entitled to recover because of BODILY INJURY sustained by another INSURED.

Universal policy (Ex. 2), Unicover 5 at page 43.  COVERED AUTO is defined as a motor vehicle "which is insured by this Coverage Part and shown on the declarations." Id. at page 42.  The Declaration Pages indicate that Coverage Part 530 applies to all

---

[4] Whether Whalen is entitled to the uninsured/underinsured motorist coverage is another question.  It is also one that ultimately depends on whether the jury determines that Dunn is at fault for the accident.  If the jury decides that Dunn is solely at fault, then Whelan is not able to collect uninsured/underinsured motorist coverage.  Similarly, if the jury decides that Dunn and Temper are jointly responsible for the accident, then Whelan is not able to collect uninsured/underinsured motorist coverage.  If the jury decides that the accident is solely Temper's fault, then Whelan may be entitled to collect uninsured/underinsured motorist coverage, but this assumes that Temper's vehicle qualifies as an uninsured or underinsured vehicle.  Upon information and belief, Temper had insurance that provided $20,000 per person and $40,000 per accident of liability coverage.  Whether Temper's vehicle is underinsured is not raised by this motion.  The only issue raised in this motion is the issue of the limits of that coverage.

[5] The UNICOVER policy uses "YOU" to refer to the named insured.  Universal Policy (Ex. 2), Unicover 5 at page 5 ("'YOU' and 'YOUR' means the person or organization shown in the declarations as the Named Insured.").

vehicles insured by the Coverage Part 500. <u>See</u> Universal Policy (Ex. 2), Decl. Page at 1-II. The 2000 Camaro Z8 operated by Dunn, in which Whalen was a passenger, is insured under Coverage Part 500. <u>See</u> Affidavit of Thomas Hubbartt (Ex. 3), ¶ 12. Coverage Part 530 also states, in THE MOST WE WILL PAY section, that the most Universal will pay in uninsured/underinsured motorist coverage is "the limit stated in the declarations." Universal Policy (Ex. 2), Unicover 5 at page 43. The limit stated in the declarations under Coverage Part 530 for NuCar Connection is $40,000. Assuming Whalen were injured by an uninsured/underinsured motorist, this is the most she could collect from Universal.[6]

B.

Coverage Part 980 does not provide
any uninsured/underinsured motorist coverage

As noted previously, Whalen also apparently contends that the Universal policy provides $20,000,000 of uninsured motorist coverage under Coverage Part 980. <u>See</u> Amended Compl. ¶ 19. This assertion is incorrect.

Coverage Part 980 provides excess <u>liability</u> coverage. <u>See</u> Universal Policy (Ex. 2), Unicover 5 at page 68; <u>see</u> Affidavit of Thomas Hubbartt (Ex. 3), ¶ 19. It is designed to indemnify the insured from legal liability to others. The insuring agreement states:

> INSURING AGREEMENT--WE will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of:
>
> (a) coverage provided in any UNDERLYING INSURANCE;

---

[6] <u>See</u> note 4. There are also offsets and other provisions of Coverage Part 530 that may be applicable.

> (b) coverage provided to an INSURED in any other insurance;
>
> (c) in the absence of (a) or (b) the retention shown in the declarations.
>
> WE have the right and duty to defend any SUIT for LOSS not covered by other insurance, but WE have no right or duty to defend SUITS for LOSS not covered by this Coverage Part. WE may investigate and settle any claim or SUIT WE consider appropriate.

Universal Policy (Ex. 2), Unicover 5 at page 68. LOSS is defined as "all sums the INSURED legally must pay as DAMAGES because of INJURY to which this insurance applies caused by an OCCURRENCE." Universal Policy (Ex. 2), Unicover 5 at page 70. As is evident, Part 980 provides excess liability coverage. It does not provide uninsured/underinsured motorist coverage.

In addition, Coverage Part 530 is not designated as an underlying coverage to Coverage Part 980. The declaration pages for the policy state:

> UNDERLYING INSURANCE:
>
> PART 2 (EMPLOYER'S LIABILITY INSURANCE) OF ANY WORKERS' COMPENSATION ISSUED BY US TO THE INSURED SHOWN FOR THIS COVERAGE PART; ALL OTHER COVERAGE PARTS OF THIS POLICY PROVIDING LIABILITY INSURANCE FOR THE INSUREDS NAMED ON THIS COVERAGE PART <u>EXCEPT COVERAGE PART 530</u>, PART 550, ENDORSEMENT 038 OF COVERAGE PART 900, AND COVERAGE PART 970.
>
> OTHER POLICIES:
>
> NONE

Universal Policy (Ex. 2), Declaration Pages at 1-RR (emphasis added). Finally, Coverage Part 980 contains an exclusion that expressly excludes uninsured and underinsured motorists coverage from the reach of Coverage Part 980. It states:

13

>   EXCLUSIONS--This insurance does not apply to:
>
>   (t)    any INJURY recoverable under automobile no-fault or personal injury protection, Uninsured Motorists or Underinsured Motorists Coverages.

Universal Policy (Ex. 2), Unicover 5 at page 75.

### 4.

### Basic Auto (Coverage Part 900) does not apply to the 2000 Camaro Z8 operated by Dunn because it is not listed on the declaration page as an OWNED AUTO and is not a TEMPORARY SUBSTITUTE AUTO

Count V of Whalen's Amended Complaint alleges that the Basic Auto Coverage Part 900 applies to the 2000 Camaro Z8 that was involved in the July 4, 2000, accident and that was owned by NuCar Connection. See Amended Complaint ¶ 25. It seeks a declaration that she is insured under Coverage Part 900. See Amended Complaint, Wherefore Clause ¶ (A). Whalen is not entitled to that declaration. See generally Affidavit of Thomas Hubbartt (Ex. 3), ¶¶ 6-10.

The introduction for Coverage Part 900 states:

>   This Coverage Part applies only when it is shown in the declarations. Such insurance applies only those insureds, security interests and locations designated for each coverage as identified in declarations item 2 by letter(s) or number

Universal Policy (Ex. 2), Unicover 5 at page 47. Coverage Part 900 is divided into several sections (marked by bold capital lettering). Of importance is the Insuring Agreement, which states:

>   INSURING AGREEMENTS--We will pay:

      A.      INJURY--all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies, caused by an OCCURRENCE arising out of the ownership, maintenance, use, loading or unloading of an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO.

Universal Policy (Ex. 2), Unicover 5 at page 47  Coverage Part 900 defines "OWNED AUTO" as "an AUTO YOU own or LEASE and is scheduled in the declarations, and any AUTO YOU purchase or LEASE as its replacement during the Coverage Part period. Universal Policy (Ex. 2), Unicover 5 at page at 48.

Universal is entitled to summary judgment because Dunn was not operating a vehicle that falls within the definition of "OWNED AUTO."  As the definition of "OWNED AUTO" makes clear, only those autos that are owned or leased <u>and</u> are listed on the declaration page qualify as an OWNED AUTO.  Coverage is also extended when a person is operating a vehicle that is a temporary substitute for an OWNED AUTO.  The policy defines TEMPORARY SUBSTITUTE AUTO as "AUTO not owned or LEASED by YOU, YOUR partners, officers or employees, or member of YOUR or their household, when it is used temporarily with the owner's permission to replace an OWNED AUTO which is out of service due to its repair, servicing, loss or destruction." <u>Id.</u> at 49.

By its clear terms, Coverage Part 900 Basic Auto applies only to the autos that fall within the definition of OWNED AUTOS and TEMPORARY SUBSTITUTE AUTO.  In order to qualify as an OWNED AUTO, the vehicle must be listed on the declaration page. A TEMPORARY SUBSTITUTE VEHICLE is a vehicle that temporarily replaces an OWNED AUTO while the OWNED AUTO is out of service because of repair, servicing,

15

loss or destruction. The declaration pages list a trailer, a 1987 Ford Coupe, a 1967 Chevrolet Corvette, another 1967 Chevrolet Corvette, a 1963 Chevrolet Corvette Coupe, a 1999 Chevrolet Express, a 1983 Yamaha Golf Car, a 2000 Yamaha Golf Car, a 1995 Harley Davidson 1340 CC motorcycle, and a 1981 Yamaha 100 midnight special motorcycle. See Universal Policy (Ex. 2), Declaration Pages at 1-MM to 1-PP.

The 2000 Camaro Z8 operated by Barbara Dunn when the July 4, 2000, accident occurred is not listed as an OWNED AUTO on the declaration page. Therefore, it is not an OWNED AUTO as defined by Coverage Part 900. It does not qualify for Coverage Part 900 coverage. See Affidavit of Thomas Hubbartt (Ex. 3), ¶¶ 6-11. Universal, however, readily admits that Dunn, as a permissive user of one of NuCar Connection's vehicles, is covered by the AUTO HAZARD portion of Coverage Part 500. That Coverage Part provides $300,000 of liability insurance. See Affidavit of Thomas Hubbartt (Ex. 3), ¶ 12.

5.

Dunn is not an insured under Coverage Part 980

Count V seeks a declaration that the $20,000,000 umbrella coverage provided by Coverage Part 980 applies to Dunn. More specifically, Count V alleges that Dunn is an "insured" under Coverage Part 980. This is incorrect.

The introduction for Coverage Part 980 states:

This Coverage Part applies only when it is shown in the declarations. Such insurance applies only those insureds, security interests and locations designated for each coverage as identified in declarations item 2 by letter(s) or number

Universal Policy (Ex. 2), Unicover 5 at page 68.  Coverage Part 980 is divided into several sections (marked by bold lettering).  Of importance are the following sections: Insuring Agreement and Who is an Insured.

> The insuring agreement states:
>
> INSURING AGREEMENT--WE will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of:
>
> > (a) coverage provided in any UNDERLYING INSURANCE;
> >
> > (b) coverage provided to an INSURED in any other insurance;
> >
> > (c) in the absence of (a) or (b) the retention shown in the declarations.
>
> WE have the right and duty to defend any SUIT for LOSS not covered by other insurance, but WE have no right or duty to defend SUITS for LOSS not covered by this Coverage Part.  WE may investigate and settle any claim or SUIT WE consider appropriate.

Universal Policy (Ex. 2), Unicover 5 at page 68.  The umbrella coverage contains the following section that delineates who is an insured for the umbrella coverage

> WHO IS AN INSURED ....
>
> ....
>
> With respect to any AUTO or watercraft:
>
> (a) YOU;
>
> With respect to (1) any AUTO or watercraft used in YOUR business or (2) personal use of any AUTO owned or hired by YOU:
>
> > (a) any person or organization shown in the declarations for this Coverage Part as a "Designated Person".

Universal Policy (Ex. 2), Unicover 5 at 71.  The UNICOVER policy uses "YOU" to refer to the named insured.  Universal Policy (Ex. 2), Unicover 5 at page 5 ("'YOU' and

17

'YOUR' means the person or organization shown in the declarations as the Named Insured.").

Coverage Part 980 provides $20,000,000 of excess liability insurance to the named insureds designated on the declaration page as named insureds 1, 3, 5, 8, 11, 12, 13 and 17.[7]  See Universal Policy (Ex. 2), Declaration Pages at 1-RR; see also Affidavit of Thomas Hubbartt (Ex. 3).  As noted above, NuCar Connection is named insured # 3.  Barbara Dunn is not listed as a named insured.

Coverage Part 980 also applies to the certain persons who are designated as insureds on the declaration pages.  The "Designated Persons" for Coverage Part 980 coverage are David B. Greytak, Ronald Miller, Bonnie Miller, and Frederick W. Hertrich III.  See Universal policy (Ex. 2), Declaration Pages at 1-RR.  Dunn is not listed as a designated person for Coverage Part 980 coverage purposes.

As Dunn is neither a named insured nor a designated person, she does not qualify for insurance under Coverage Part 980.  See Affidavit of Thomas Hubbartt (ex. 3), ¶¶ 19-20.  NuCar Connection, which is also a defendant, is an insured under Coverage Part 980 because it is a named insured designated for that coverage.  See Universal Policy (Ex. 2), Declaration Pages at 1-RR; see also Affidavit of Thomas Hubbartt (Ex. 3).  To the extent that NuCar Connection is found to be vicariously liable for Dunn's acts, NuCar Connection would be covered under Coverage Part 980 (but Dunn would not).

---

[7] See note 3.

Conclusion

Universal is entitled to partial summary judgment as to Count IV and to summary judgment as to Count V for the reasons set forth in this memorandum. This Court should decide, declare and adjudge that the Universal policy:

1. Provides $40,000 of uninsured/underinsured motorist coverage;

2. Does not provide coverage to Dunn under Coverage Part 900 (Basic Auto); and

3. Does not insure Dunn under Coverage Part 980 (Umbrella).

Respectfully submitted,

*Andrew Janquitto /s/*
_____
Andrew Janquitto
Mudd, Harrison & Burch
105 West Chesapeake Avenue
300 Jefferson Building
Towson, Maryland 21204
410 828 1335
Fed. Bar. # 06637

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion and Memorandum was mailed or efiled on June 30, 2003, to each of the following:

Douglas W. Biser
Mudd, Harrison & Burch
105 West Chesapeake Avenue
300 Jefferson Building
Towson, Maryland 21204

Paul D. Bekman, Esquire
Salsbury Clements Bekman Marder & Adkins, LLC
300 West Pratt Street
Suite 450
Baltimore, Maryland 21201

David F. Ryder, Esquire
Brault, Graham, Scott & Brault, LLC
101 South Washington Street
Rockville, Maryland 20850

Russell Fields, Esquire
Simmons, Fields & Fanshaw
1 North Charles Street, Suite 20
Baltimore, Maryland 21 201

*Andrew Janquitto /s/*
_____
Andrew Janquitto