UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

NANCY J. WHALEN

      Plaintiff

                                                  CIVIL ACTION

v.

                                                  RDB 02 CV 191

NUCAR CONNECTION, INC., et al.

      Defendants

*** 

DEFENDANT NUCAR CONNECTION, INC.'S
MOTION FOR SUMMARY JUDGMENT

Defendant Nucar Connection, Inc., by its attorney, moves for summary judgment as to Plaintiff Nancy J. Whalen's Amended Complaint for the following reasons:

1.      There is no genuine dispute as to any material fact;

2.      NuCar is entitled to summary judgment as a matter of law;

3.      NuCar cannot be vicariously liable under the doctrine of respondeat superior because Barbara Dunn was not acting within the scope of her employment with NuCar at the time of the accident.

Wherefore, NuCar asks this Court to grant this Motion and enter judgment in its favor.

Respectfully submitted,


*Douglas W. Biser /s/*
_____
Douglas W. Biser
Mudd, Harrison & Burch
105 West Chesapeake Avenue
300 Jefferson Building
Towson, Maryland 21204
410 828 1335


## MEMORANDUM IN SUPPORT OF MOTION

Defendant NuCar Connection, Inc. ("NuCar"), by its attorney, files this memorandum in support of its motion for summary judgment as to Plaintiff Nancy J. Whalen's Amended Complaint.


### The Accident

Plaintiff Whalen was injured in a July 4, 2000, accident while a passenger in a vehicle operated by Defendant Barbara Dunn and owned by NuCar Connection, Inc.  See Amended Compl. ¶ 2. The Accident occurred in Chesapeake City, Maryland.

At the time of the accident, Dunn and Whalen were driving home from visiting friends and viewing the July 4th fireworks.  See Deposition of Dunn at 23 (Exhibit 1). The Camaro had a NuCar sticker on the tail end, a dealer license plate frame and a dealer decal on the front window.  See id. 16-18.  There was no FOR SALE sign on the vehicle at the time of the accident.  See id.  Dunn was employed as a site controller, which

involved monitoring expenses and other financial matters.  <u>Id.</u> at 6.  Dunn was not a salesman, did not sell vehicles and had no authority to consummate any sale.  <u>Id.</u>

Whalen's Amended Complaint

Nancy Whalen has sued Dunn, Donald Temper and NuCar Connection in tort. She alleges that her injuries were caused, jointly and/or severally, by Dunn and Temper. In addition, she claims that NuCar Connection is vicariously liable for Dunn's tortious acts.  <u>See</u> Amended Compl. ¶¶ 6 to 16.

Whalen's Vicarious Liability Theory

Whalen's position is that NuCar is vicariously liable for Dunn's operation of the vehicle because the Camaro operated by Dunn was a demonstrator vehicle, and Dunn's use of that vehicle on July 4 places her within the scope of employment because it is a rolling advertisement of NuCar vehicles.  More specifically, Whalen contends the following:

> The Camaro was a "demonstrator" car that NuCar provided to Dunn as part of her employment package.  <u>See</u> Deposition of Gail M. Chickersky at 26 (Exhibit A).  Demonstrators are new vehicles available for customers to test drive and are subject to being sold at any time.  <u>See</u> Chickersky Depo at 28-29.  Until sold, they are also provided to certain top level NuCar employees for business and personal use under written stipulations and rules.  <u>See</u> Chickersky Depo at 26.  The conditions placed by NuCar on Dunn's use of a demonstrator are set forth in the DEMONSTRATOR PLAN she signed on November 11, 1991 (Exhibit B).

> Dunn's off-premise use of the Camaro was highly beneficial to NuCar who considered demonstrators to be "rolling billboards" for NuCar and its products.  <u>See</u> Chickersky Depo at 27-28, 30.  When using a

3

demonstrator, Dunn and other NuCar employees were encouraged to refer any potential customer who was drawn to the demonstrator to NuCar sales personnel.  <u>See</u> Chickersky Depo at 31.  For this reason, Dunn carried several business cards of NuCar salesmen with her, and on average she made four or five referrals each year.  <u>See</u> Deposition of Barbara A. Dunn at 20-21, 49 (Exhibit C).

Whalen's Resp. to Universal's Motion for Summary Judgment at page 2.


ARGUMENT


Whalen's vicariously liability theory fails as a matter of law, and summary judgment should be entered in favor of NuCar.

1.

Choice of Law


In this diversity case, this Court must apply the law of the forum in deciding what substantive law to apply to the interpretation of the NuCar insurance policy.  <u>See</u> <u>Klaxon v. Stentor Mfg. Co.</u>, 313 U.S. 487 (1941).  Maryland follows the doctrine of <u>lex loci delicti</u> when determining the choice of law in a tort case.  See <u>Philip Morris Inc. v. The Honorable Edward J. Angeletti</u>, 752 A.2d 200, 230 (Md. 2000).  Under this doctrine, the law of the place of the wrong applies.  <u>Id.</u> at 230-31.  The accident occurred in Maryland.  As such, Maryland substantive tort law applies.


2.

NuCar cannot be vicariously liable because
Dunn was not within the scope of employment
at the time of the accident

Maryland law on an employer-owner's vicarious liability for the negligent operation of a motor vehicle is well-established. The Court of Appeals has summed up the law as follows:

> Mere ownership of a car does not impose liability for injuries caused in the driving of it. Liability, when it exists, is not for the car, but only for the act or omission of the person driving. And when the owner has not himself been the negligent cause of an injury, he can be held liable vicariously only when the negligence has been that of his servant engaged in his affairs. <u>He is not even liable for the negligence of his general servant, his chauffeur, for instance, unless at the time the servant has been conducting the owner's affairs.</u>

<u>Schneider v. Schneider</u>, 152 A.2d 498, 499 (Md. 1930)(emphasis added). As the highlighted language demonstrates, the fact that Dunn was employed by NuCar is not dispositive. She must be conducting her employer's affairs at the time of the accident. In other words, Dunn must be within the scope of his employment at the time of the accident. To be within the scope of employment, the conduct of the employee must be "of a kind the actor is employed to perform, occur during a period not unreasonably disconnected from the authorized period of employment, in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." <u>Atlantic & Pacific Co. v. Noppenberger</u>, 189 A.2d 434, 440 (1937)

Under Maryland law, there is a presumption that the operator of a vehicle is acting within the scope of employment as the agent, servant or employee of the owner of the vehicle. <u>E.g.</u> <u>Toscana v. Spriggs</u>, 681 A.2d 61, 65 (Md. 1996). This presumption of agency is rebuttable. <u>E.g.</u> <u>A.S. Abell Co. v. Sopher</u>, 22 A.2d 462, 463 (Md. 1941). If

rebutted, the issue of agency becomes one for the Court unless there is contrary evidence that creates a jury question.  See, e.g., id.

Maryland courts have implicitly rejected Whalen's rolling advertisement theory. In Phipps v. Milligan, 199 A. 498 (Md. 1938), the Court of Appeals held that a car salesman was not within the scope of employment while using car dealership vehicle for his personal use.   Id. at 498-99.   Other jurisdictions have rejected the rolling advertisement theory, either implicitly, see, e.g., Barrett v. Employers' Liab. Assur. Corp., 118 F.2d 799, 800 (5th Cir. 1941); Universal Underwriters Ins. Co. v. Farmers Ins. Co. of Idaho, 697 P.2d 1263, 1266 (Idaho App. 1985); Brownlee v. Holiday Lincoln Mercury, Inc., 675 S.W.2d 817, 818 (Tex. App. 1984), or explicitly, see, e.g., Sharp v. Egler, 658 F.2d 480, 486-87 (7th Cir. 1981); State of Montana ex rel. City Motor Company v. The District Court, 530 P.2d 486, 489 (Mont. 1974).

Sharp illustrates the judicial reasoning that leads to the conclusion that the mere operation of a demonstrator vehicle does not place the employee within the scope of employment.  There, Sharp was injured while a passenger in a vehicle operated by Egler. Sharp and Egler had been dating for a while before the accident, and, on the day of the accident, Sharp and Egler had been out socially, attending a party and bar hopping.  The accident occurred at 4:00 a.m. while they were driving home.  Sharp contended that since Egler, a car salesman, was acting within the scope of his employment with Bill Hank Auto Sales, Inc., because the vehicle he was operating was a demonstrator vehicle, which was advertising Hanka's vehicles.  The district court rejected this theory:

Although the advertising theory has appeal, Sharp has not come forward with proof of these allegations. There was no advertising on the TransAm, or on any of the Hanka cars Egler used, other than the normal Clarksville Auto Mart sticker on the back of the car. Anyone stopped behind Egler at a stoplight could have discovered that a demonstrator had come from Hanka's, but would not realize that the car was for sale unless he knew Egler was a Hanka salesman who was allowed to drive the unsold car.

658 F.2d at 487 n. 11 (quoting District Court Opinion). The Seventh Circuit affirmed:

Sharp argues that there was enough evidence that Egler was acting within the scope of his employment to make the issue a factual one to be determined at trial. Egler was employed as a used-car salesman by Hanka Auto Sales, which did business as Clarksville Auto Mart, and the company owned the car Egler was driving the night of the accident. The car had on its back a small "Clarksville Auto Mart" sticker. The car was a used car, called a demonstrator, and Egler was allowed to drive it as such, but it showed no exterior sign it was for sale. Egler testified at his deposition that the company gave their salesmen cars for their own personal driving, until they were ready to be put on the lot. He said, "That's how we advertise our cars by driving it (sic), and we normally drive a fairly flashy car and it drew attention."

....

Egler was using the car for his own purposes and was not attempting to sell or advertise the car for Hanka Auto Sales. In Indiana, it is not necessary that an employee's use of a car be exclusively for his employer's ends in order for that use to fall within the scope of his employment, but the mere placing of an ordinary dealer sticker on the back of the car did not amount to a sufficient benefit to the employer to make a drive home at 4:00 a. m. one within the scope of Egler's employment. All cars have such dealer stickers, and the public had no way of knowing the car was for sale. The district court was therefore correct in refusing to impose any vicarious liability on Egler's employer.

Id. at 486-87.

Similarly, the Supreme Court of Montana in City Motor Company reasoned as

follows:

> [The plaintiff argues that] the mere fact that a demonstrator on the street is of benefit to the dealer is enough to make the dealer answer for the faults of his salesmen who drive it. This asks too much, for it would hold the dealer responsible at all times. We are not aware of any rule or policy of agency law requiring such a sweeping application of the doctrine of <u>respondeat superior</u>. Moreover, the law in Montana is settled on the point that where an employee uses the master's car on a mission of his own, some slight incidental benefit which may thereby accrue to the master is insufficient to warrant holding the master liable for the employee's negligent operation of that vehicle. Cases in other jurisdictions are in agreement.

530 P.2d at 489.

Maryland law is entirely consistent with the reasoning in <u>Sharp</u> and <u>City Motors Company</u>. As noted, in <u>Phipps</u>, 199 A. 498, the Court of Appeals held that a car salesman was not within the scope of employment while using car dealership vehicle for his personal use. <u>Id.</u> at 498-99. In contrast, in <u>Beam Motor Car. Co. v. Loewer</u>, 102 A. 908 (1917), the Court of Appeals ruled that a car salesman was within the scope of employment while driving a demonstrator because he had an appointment to show the vehicle to a prospective customer and had been given specific permission to take the vehicle for that purpose. <u>Id.</u> at 910. As <u>Phipps</u> and <u>Beam Motor Car</u> show, the critical inquiry is whether the employee is operating the vehicle within the scope of employment. Mere incidental benefit to the employer will not bring the employee within the scope of employment. <u>See Wagner v. Page</u>, 20 A.2d 164, 168 (Md. 1941)(rejecting argument that employee's use of vehicle to drive home and rest before resuming work benefited the employer). Driving a demonstrator confers, at best, incidental benefit on the owner. <u>See, e.g.</u>, <u>Sharp</u>, 658 F.2d at 486-87; <u>City Motor Company</u>, 530 P.2d at 489. This is particularly true with regard to Dunn, who was not a salesman, and did not have the

authority to sell vehicles.  See Dunn Depo. at 4-6.  On the particular day of the accident, which was a holiday, Dunn did not work, and was driving home from a social gathering. See id. at 23.  Also, the NuCar identification markers on the Camaro (sticker, license plate frame, and window decal) were those that NuCar placed on all its vehicles.  See id. at 16-18.  There was no FOR SALE sign on the vehicle.  Dunn was not trying to sell the vehicle.  Dunn did not try to sell the Camaro to anyone on the day of the accident.  At the time of the accident, Dunn was not performing any task that she ordinarily performed as a site controller for NuCar.  She was merely driving home after enjoying the July 4th holiday with friends.  The rolling advertisement theory exposed by Whalen fails as a matter of law.

## Conclusion

Defendant NuCar Connections, Inc. is entitled to summary judgment as to Plaintiff Whalen's complaint for the reasons advanced in this memorandum.

Respectfully submitted,

*Douglas W. Biser /s/*

_____
Douglas W. Biser
Mudd, Harrison & Burch
105 West Chesapeake Avenue
300 Jefferson Building
Towson, Maryland 21204
410 828 1335

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion and Memorandum was mailed or efiled on June 30, 2003, to each of the following:

Andrew Janquitto, Esquire
Mudd, Harrison & Burch
105 West Chesapeake Avenue
300 Jefferson Building
Towson, Maryland 21204

Paul D. Bekman, Esquire
Salsbury Clements Bekman Marder & Adkins, LLC
300 West Pratt Street
Suite 450
Baltimore, Maryland 21201

David F. Ryder, Esquire
Brault, Graham, Scott & Brault, LLC
101 South Washington Street
Rockville, Maryland 20850

Russell Fields, Esquire
Simmons, Fields & Fanshaw
1 North Charles Street, Suite 20
Baltimore, Maryland 21 201

*Douglas W. Biser /s/*
_____
Douglas W. Biser