IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANCY J. WHALEN | * | |
| Plaintiff | * | |
| v. | * | Civil Action No: RDB - 02-191 |
| DONALD L. TEMPER, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
NUCAR CONNECTION, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Nancy J. Whalen, by her attorneys, Paul D. Bekman, Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., files this Memorandum In Opposition to Defendant NuCar Connection, Inc.'s Motion for Summary Judgment.

**STATEMENT OF FACTS**

This action arises out of a motor vehicle accident which occurred on July 4, 2000. After midnight on the Fourth, the Defendant, Barbara A. Dunn ("Dunn"), was driving home in a 2000 Camaro Z8 in a northbound direction on Route 213, near its intersection with Court House Point Road. The Plaintiff, Nancy J. Whalen, was a passenger in the Camaro. A vehicle owned and operated by the Defendant, Donald L. Temper ("Temper"), was headed southbound on Route 213, when it crossed the center line towards the Dunn vehicle. In response, Dunn swerved to the right and then moved her car to the left across center line into the southbound lane of Route 213, and collided with the Temper vehicle on the wrong side of the roadway. The Plaintiff sustained serious and permanent injuries as a result of the collision.

At the time of the collision, Dunn was employed by the Defendant, NuCar Connection, Inc. ("NuCar") as a site controller under the supervision of Gail Chickersky. See Deposition of Gail M. Chickersky at 21, 24-25 (**Exhibit A**). NuCar is in the business of selling new cars and vehicles. Id. at 26. One manner in which it promotes its vehicles is through the use of "demonstrators." Id. at 26. Demonstrators are new vehicles available for customers to test drive and are subject to being sold at any time. Id. at 28-29. Until those vehicles are sold, they are also provided to certain top level NuCar employees for business and personal use under written stipulations and rules. Id. at 26. Dunn was one of those employees to whom NuCar provided a demonstrator vehicle as part of her employment package. Id. at 26. The conditions placed by NuCar on Dunn's use of a demonstrator are set forth in the DEMONSTRATOR PLAN she signed on November 11, 1991 (**Exhibit B**).

One of NuCar's purposes for permitting its high level employees to use demonstrators was to promote the vehicles and the dealership.[1] See Chickersky Depo. at 26. For NuCar, demonstrators were "rolling billboards." Id. at 30. Getting them out on the road for people to see was a benefit to NuCar. Id. at 30. NuCar encouraged its top-level employees, whom it deemed to be excellent representatives of the company, to show off the demonstrator vehicles in the community.[2] Id. at 30-31, 40.

Because every demonstrator was available for immediate sale, if a prospective customer saw one on the road and wanted to buy it, he or she could. Id. at 29-30. NuCar specifically

---

[1] The use of a demonstrator also made the top-level employees familiar with the attributes of the range of products offered by NuCar. See Chickersky Depo. at 30.

[2] NuCar was aware that its employees would be using demonstrators for personal use as well. See Chickersky Depo. at 40.

encouraged its employees with demonstrators to act as mini-salesman, to tout the vehicle they were driving, and to refer prospective customers to sales representatives when appropriate. Id. at 30-31, 40.

Dunn understood that whenever she was driving a NuCar demonstrator, she was promoting it for the benefit of NuCar. See Deposition of Barbara A. Dunn, at 48-49 (**Exhibit C**). The demonstrator was always available for anyone to look at when she was driving.[3] Id. at 19. Four or five times each year, people would approach her and express an interest in the demonstrator that she was driving. Id. at 20-21. When that occurred, Dunn would talk with the prospective customer about the vehicle, say it was available for sale and refer him or her to a NuCar sales representative. Id. at 20-21, 48-49. For this reason, she always carried business cards of NuCar sales representatives. Id. at 49

The Camaro was the demonstrator owned by NuCar and provided to Dunn in July of 2000, prior to the accident. See Deposition of Gail M. Chickersky at 26. Dunn worked a full day at NuCar on July 3, 2000. Dunn Depo art 53-53. After leaving work, she had dinner with friends. Id. at 54. On her way home from dinner, in the early morning hours of July 4, the accident occurred.

## STANDARD FOR SUMMARY JUDGMENT

The legal standard for summary judgment was aptly summarized in *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480-81 (D. Md. 2002):

> Summary judgment is appropriate where there is no genuine issue as

---

[3]Because Dunn knew that a prospect might look at the demonstrator she was driving, she washed it more than once a week and kept the car clean at all times to make sure it was in excellent shape for the public. Dunn Depo. at 52.

to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987).

## ARGUMENT

NuCar's motion should be denied. When the evidence is viewed in a light most favorable to the Plaintiff, it shows that in using the Camaro, Dunn was acting within the scope of NuCar's business. Her use of the Camaro conferred an expected and desired benefit to NuCar.

NuCar owned the Camaro. Under longstanding Maryland law, Dunn is presumed to be NuCar's agent, acting within the scope of her employment, at the time she was driving the Camaro on July 4, 2000. See *Toscano v. Spriggs*, 343 Md. 320, 325-26, 681 A.2d 61, 64 (1996), and cases cited therein; see also *Campfield v. Crowther*, 252 Md. 88, 96, 249 A.2d 168, 173 (1969) ("It is presumed that the operator of an automobile is the agent, servant, or employee of the owner of the vehicle acting within the scope of his employment,"); *Phillips v. Cook*, 239 Md. 215, 210 A.2d 743 (1965)(partner in used car business vicariously liable for injuries caused in an accident that occurred when fellow partner was driving home in partnership car).[4] NuCar has both the burden of production and the burden of persuasion in rebutting the presumption and in showing that Dunn was not using the Camaro for its benefit. See *Phillips v. Cook,* 239 Md. at 222, 210 A.2d at 748; *State Farm Mutual Auto. Ins. Co. v. Martin Marietta Corp.*, 105 Md. App.

---

[4] See also *State Farm Mutual Auto. Ins. Co. v. Martin Marietta Corp.*, 105 Md. App. 1, 657 A.2d 1183, 1186 (1995) (presumption that driver has owner's permission)

1, 8, 657 A.2d 1183, 1186 (1995). "To rebut the presumption as a matter of law the evidence required to accomplish this must be both <u>uncontradicted and conclusive</u>." *Campfield*, 252 Md. at 96, 249 A.2d at 173 (emphasis in the original). "'[I]f the evidence as to agency be contradicted, or if uncontradicted is not conclusive, the question should be submitted to the jury.'" <u>Id</u>. ,quoting, *Hoerr v. Hanline*, 219 Md. 413, 420, 149 A.2d 378, 381 (1959).[5]

NuCar has not met its burden and rebutted the presumption of agency as a matter of law. It merely alleges in its motion that Dunn was not driving the Camaro in the course of her employment. Nowhere does NuCar direct this Court to uncontradicted and conclusive evidence establishing its allegation. Indeed, NuCar ignores the very evidence that requires a denial of its motion.

NuCar's corporate designee, Gail Chickersky, stated that NuCar considered its demonstrators to be "rolling billboards." She testified that NuCar benefitted by having its demonstrator cars seen on the roads, and that it wanted its top-level employees to promote the demonstrators they were driving when out in the community. NuCar expected its personnel who were out on the roadway and showing the vehicle to refer prospective customers drawn to the demonstrator to sales representatives. Dunn understood, and consistent with that expectation, NuCar benefitted on average four or five times a year when Dunn referred those people who approached her about her demonstrator on to NuCar sales representatives.

Instead of acknowledging this direct evidence, NuCar mounts an attack on "Whalen's

---

[5] <u>See</u> *Phillips*, 239 Md. at 219; 210 A.2d at 746 ("If there was any evidence, no matter how slight, viewed in the light most favorable to [plaintiff] that Harris, in using the partnership vehicle, was acting within the scope of the partnership agreement and business, *i.e., the use was of some benefit or incidental to the partnership arrangement*, then the question was for the jury's determination.")(Emphasis added.).

rolling advertisement <u>theory</u>." <u>See</u> NuCar Memorandum at 6 (emphasis added). This attack consists largely of quoting cases in which the injured plaintiffs did not offer evidence <u>from the dealership</u> regarding what benefits it wanted to obtain by providing a demonstrator to its employee; rather, the plaintiffs simply argued from the circumstances that the dealership benefitted by having its car on the road. <u>See</u> *Universal Underwriters Insurance Co. v. Farmers Insurance Company of Idaho*, 108 Idaho 249, 697 P.2d 1263 (1985)(in declaratory judgment action between insurers after settlement of personal injury no direct evidence presented regarding benefit to car dealer); *Brownlee v. Holiday Lincoln Mercury, Inc.*, 675 S.W. 2d 817 (Tex. App. 1984)(court's opinion contains no information of dealer's purpose in permitting salesman to use demonstrator); *Sharp v. Egler*, 658 F.2d 480 (7th Cir. 1981)(no evidence from the dealer regarding why it permitted salesman to use demonstrator); *State of Montana ex rel. City Motor Company, Inc. v District Court of the Eight Judicial District*, 166 Mont 52, 530 P.2d 486 (1975)(salesman was not acting within scope of employment even though driving on the street was of some benefit to dealer); *Barrett v. Employers' Liability Assur. Corp.*, 118 F.2d 799 (5th Cir. 1941)(there was no evidence from which it could be inferred that any benefit could accrue to the dealer).[6]

In those cases, however, where the injured plaintiff has shown that the employee's use of a demonstrator provided a direct benefit to the dealer, appellate courts have held that a directed

---

[6] The two Maryland cases cited by NuCar turn on their particular facts and do not address either expected or incidental benefits to a dealer from having its demonstrators on the roadway. <u>See</u> *Phipps v. Milligan*, 174 Md. 438, 199 A. 498 (1938)(owner permits salesman to borrow a car for personal business because salesman's car is too small for the personal business); *Beam Motor Car, Co. v Loewer*, 131 Md. 552, 102 A. 908 (1917)(dealer gave salesman permission to take car from lot after hours to show off site to anticipated customer).

verdict or summary judgment was inappropriate and have reversed judgments in favor of the dealer-owner. In *Pfender v. Torres*, 336 N.J. Super 379, 765 A.2d 208 (2001), the dealer of BMWs provided Torres, a member of its sales staff, with a demonstrator. Torres injured the plaintiff when he pulled into a gas station on his way to work. The dealer's general manager said that salesmen were provided with demonstrators for several reasons. First, a number of the salesmen did not have cars; second, having the use of a demonstrator provided salesmen with an incentive to work at the dealership; and last, demonstrators were provided "'to obtain promotional and advertising benefits which are derived when the salesmen drive the cars the dealership sells.'" 336 N.J. Super at 393, 765 A.2d at 216-17. This evidence showed that Torres was using the demonstrator in part to advance his employer's business or interests, and the appellate court reversed the entry of a directed verdict in favor of the dealer.

The appellate court reversed the entry of summary judgment in *Allen v. Milton Martin Enterprises, Inc.*, 197 Ga. App. 119, 397 S.E.2d 586 (1990). The plaintiff there was injured while a salesman was driving a demonstrator to work. The plaintiff affirmatively showed that the dealer-defendant provided demonstrators to its sales staff as part of their total compensation, and that it "required its sales staff to drive their company owned vehicles to work so that they would be available during the day for business purposes." 197 Ga. App. at 120, 397 S.E.2d at 587. This "business purpose" was sufficient to create a jury question. Id.

Similar to the plaintiffs in *Pfender* and *Allen*, the Plaintiff has presented direct and non-theoretical evidence that Dunn's use of the Camaro conferred a direct and expected benefit on NuCar. This evidence was not generated through the speculation of the Plaintiff, but from the mouth of the NuCar corporate designee. It was later confirmed by the testimony of Dunn. The

presumption of agency, therefore, has not and cannot be rebutted as a matter of law, and NuCar's motion should be denied.

NuCar suggests that this Court can weigh the promotional and advertising benefits it received from Dunn's use of the demonstrator and conclude that it is insufficient to create a jury issue on agency. After quoting language in *Sharp* and *in State of Montana ex rel. City Motor Company, Inc.* at pages 7 and 8 of its Memorandum, NuCar argues that *Phipps v. Milligan*, 174 Md. 438, 199 A. 498 (1938) and *Beam Motor Car, Co. v Loewer*, 131 Md. 552, 102 A. 908 (1917) somehow stand for the proposition that a "mere incidental benefit" to the dealer will not bring its employee within the scope of employment. See NuCar Memorandum at 8. No such proposition can be found in either case. Neither *Phipps* nor *Beam Motor Car* involved demonstrators; rather, in each case the salesman sought the dealer's permission on a particular occasion to use a dealer car on the lot. In *Phipps*, the salesman wanted the car solely for personal business - - to drive a family to the train station. In *Beam Motor Car*, however, the salesman wanted to car to further the dealer's business - - to show the car to a potential customer after hours.

Here, Dunn had every day use of the demonstrator for both business and personal use. NuCar wanted and expected Dunn to drive the demonstrator in the community so that it could benefit from the "rolling billboard." NuCar benefitted by having prospective customers drawn to Dunn's demonstrator while she was using it.[7]  Because of this evidence of a direct benefit to

---

[7] NuCar suggests at page 9 of it Memorandum that the advertising or promotional benefits were necessarily minimal due to the lack of additional signage and markings on the demonstrator. While those facts could be argued to a jury, the signage and markings on the car were sufficient for four of five referrals per year.

NuCar, NuCar cannot rebut as a matter of law the presumption of agency. Accordingly, its motion should be denied.

## CONCLUSION

For the reasons set forth above, NuCar is not entitled to summary judgment and its motion should be denied

---

PAUL D. BEKMAN - Federal ID No. 00019
SALSBURY, CLEMENTS, BEKMAN,
   MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANCY J. WHALEN | * | |
| Plaintiff | * | |
| v. | * | Civil Action No: RDB - 02-191 |
| DONALD L. TEMPER, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF SERVICE

THIS IS TO CERTIFY that on this 20th day of August, 2003, a copy of Plaintiff's Memorandum In Opposition to Defendant NuCar Connection, Inc.'s Motion for Summary Judgment., was mailed, postage prepaid, to:

David Franklin Ryder, Esquire
Martin Donnelly Grimaldi and Gallagher
Nine N. Adams Street
Rockville, MD 20850

                                                        PAUL D. BEKMAN - Federal ID No. 00019
                                                        SALSBURY, CLEMENTS, BEKMAN,
                                                              MARDER & ADKINS, L.L.C.
                                                        300 W. Pratt Street, Suite 450
                                                        Baltimore, Maryland 21201
                                                        (410) 539-6633

                                                        Attorneys for Plaintiff