```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

NANCY J. WHALEN                  :

                                              :

    v.                           : Civil Action No. JKB-02-191

                                              :

DONALD L. TEMPER, ET AL.         :

**MEMORANDUM AND ORDER**

Defendant Nucar Connection, Inc.(Nucar), owner of one of the motor vehicles involved in the collision that gave rise to this diversity tort claim, has moved for summary judgment. (Paper No. 30). The plaintiff was a passenger in the vehicle owned by Nucar and driven by an employee of Nucar. Nucar contends that the employee-driver of its vehicle was not acting within the scope of her employment at the time of the accident and that Nucar cannot be vicariously liable under *respondeat superior* for any negligence of the employee. The issues have been fully briefed (Papers No. 40 & 42), and no hearing is necessary. Local Rule 105.6. For the reasons set forth below, the motion (Paper No. 30) is DENIED.

*I. Standard of Review*

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). Moreover, a party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *Phoenix Savings & Loan, Inc., v. Aetna Casualty & Surety Co.,* 381 F.2d 245 (4th Cir. 1967). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.

"[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. On the other hand, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied,* 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

The parties agree, and the Court holds, that the substantive law of Maryland is to be applied in the case. The parties agree further that there is a presumption under Maryland law that an employee-operator of a motor vehicle owned by an employer is acting within this scope of employment as the agent, servant or employee of the employer. *See, Toscano v. Spriggs,* 681 A.2d 61,

64 (Md. 1996).[1] That presumption is rebuttable, "but to rebut the presumption as a matter of law the evidence required to accomplish this must be both uncontradicted and conclusive." *Campfield v. Crowther,* 298 Md. 168, 173 (Md. 1969). If the evidence to rebut the presumption is either contradicted or inconclusive, the question of agency should be submitted to the jury. *Id.*

II. *Background*

The employee-driver of the vehicle owned by Nucar was Defendant Barbara A. Dunn. Ms. Dunn was a "site controller" for Nucar who had use and possession of the vehicle, a "demonstrator," as part of her employment package. Ms. Dunn testified that she was not a salesman for Nucar and had no authority to sell automobiles for Nucar. It is uncontested that the subject accident took place after midnight on July 2, 2000, as Ms. Dunn and the plaintiff returned from a fireworks display. Nucar contends that the trip was unrelated to any of its business and that, therefore, it is not liable.

III. *Analysis*

Certain deposition testimony provided by Nucar's corporate designee is fatal to Nucar's position on this motion. Gail M.

---

[1] *Toscano* also holds that there is a presumption that a non-owner-operator of a motor vehicle operates it with the permission of the owner. *Id.*

Chickersky, controller of the company and one of Ms. Dunn's supervisors, testified in pertinent part:

> Q. Tell me if you can, as best you can recall, the circumstances under which someone such as Ms. Dunn would be, in essence given an automobile to operate.
>
> A. We don't exactly call it given.
>
> Q. Okay. Permitted to use. How is that?
>
> A. That would be fine. We are in the business of selling cars. It is in our best interests to have vehicles available for test drives. We also think that some of our top-level people are excellent representations of our company . . .
>
> . . .
>
> Q. The purpose of permitting these more high-level people, if you will, the ability to use these vehicles was to help promote the dealership?
>
> A. It also promotes the product.
>
> Q. Would, for example, the tag on the vehicle say Nucar Connection?
>
> A. The license plate frame would probably say Nucar Connection. There would definitely be a Mylar identification on the back truck deck lid or pickup tailgate. There would also probably be a front license plate that would identify the vehicle as a Nucar vehicle.
>
> . . .
>
> Q. If an individual were to look at the license plate, front or back, or the logo that tells you where the vehicle may have come from, they would see Nucar Connection?
>
> A. Yes, sir, they would.

Q. As far as Nucar Connection was concerned, they wanted to promote that fact to the public?

A. Yes, sir.

. . .

Q. So that, for example, if Ms. Dunn were out with her Camaro, her 2000 Camaro, and it says it is a Nucar and somebody sees the car and they like the car and they come to the dealership and say I saw this car out on the roadway, and do you have this car, and that car happens to be available, that demo could be sold to someone in the general public?

A. Not prior to coming back on the lot, but yes.

Q. Has that happened? Does that happen?

A. Yes, sir.

Q. Was that another reason why Nucar wanted this to be available to the public to see?

A. They are rolling billboards.

Q. So they are advertisements and they are on the road, and if they are on the road and people see them, that is a benefit to Nucar?

A. That would be our hope. The other benefit to Nucar is that our employees are more familiar with the product line that we are representing.

Q. How about somebody in her capacity, where she is, in essence, an assistant controller, does that help her, too, as far as understanding the product?

A. I can't speak for Arlene. I always felt that it helped me understand the product.

Q. How did that help you as controller?

> A. Everyone knows a certain number of people. One would hope that you would not be afraid of saying where you worked.
>
> Q. I got the picture. You are working for Nucar. You are driving this nice new car. Somebody looks at your car and says gee, that is a nice car, what can you tell me about it, and they could tell you about it?
>
> A. To a degree. I would certainly not field a question like that. I would say I work for Nucar and these are wonderful cars. May I hook you up with a salesman so you can drive one?
>
> Q. You are kind of like a mini-salesperson for Nucar hopefully?
>
> A. Whether or not I am in a vehicle or on a skateboard, I would hope that would be true.
>
> Q. Were all employees encouraged to do that?
>
> A. All employees were encouraged to do that.

Plaintiff's Exhibit A, pp. 26-31.

Moreover, Defendant Dunn provided the following testimony at deposition:

> Q. . . . Did you ever have occasion at any time during your employment with Nucar to have a person come up to you and say, I'd like to buy that vehicle, or express interest in purchasing the vehicle you were driving?
>
> A. Yes.
>
> Q. When did that occur?
>
> A. Often.
>
> Q. How often would that have occurred?
>
> A. Four or five times a year.

. . .

Q.  When inquiries were made such as that, what were you to do, or what did you do?

A.  On some occasions I had salesmen's business cards. I would talk about the car, saying that it was available for sale and they could contact the sales rep.

. . .

Q.  And I think you mentioned that there were times where you might be approached by people who would say to you and ask you about the very car that you were driving?

A.  Yes.

Q.  And I take it that you would refer them to Nucar?

A.  That's correct.

Q.  And you would promote that, would you not?

A.  Yes.

Q.  And was that your understanding as to one of the reasons you were given a demo car to have?

A.  It was a general understanding.

Q.  You also said that you carried with you some salesmen's business cards. Tell me about that.

A.  For just this occasion.

Q.  And if somebody were to ask you about a particular car, you would give them a car and say why don't you call Bill, or Tom, or whoever?

A.  That's correct.

Q.  And it did?

A. Yes.

Plaintiff's Exhibit C, pp. 20-21, 48-49.

The testimony above, construed in a light most favorable to the nonmovant, clearly could give rise to a reasonable inference that Defendant Dunn, in driving Nucar's vehicle at the time of the accident, was acting within the scope of her employment.[2] Accordingly, an award of summary judgment on that issue in favor of Nucar would be inappropriate. Moreover, even were the state evidentiary standards articulated above to be applied to this case at this stage, the testimony cited above renders inconclusive any and all evidence offered by the movant in support of its position that its employee-driver was acting outside the scope of her employment and, in fact, provides substantial evidence to the contrary, *i.e.,* that Nucar believed that it was in its business interests to have its upper-level employees such as Ms. Dunn seen operating and associated with its vehicles.

<u>October 7, 2003</u>  _____/s/_____
Date                              JAMES K. BREDAR

---

[2] Issues of summary judgment are procedural rather than substantive and are governed by federal rather than state law, even in diversity cases. Accordingly, *whether* a federal court should award summary judgment in a diversity case is basically a question of federal law. *See, General Accident, Fire & Life Assur. Corp.. Ltd. v. Akzona, Inc.*, 622 F.2d 90 (4th Cir. 1980).

                                        United States Magistrate Judge